IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JEFFREY R. KELLY                                                    PLAINTIFF

V.                                           NO. 10-3020

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a

decision of the Commissioner of the Social Security Administration (Commissioner) denying

his claims for a period of disability and disability insurance benefits (DIB) and supplemental

security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security

Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence

in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

Plaintiff originally filed his applications for DIB and SSI on July 25, 2003, alleging

disability since May 22, 2001, due to arthritis, gangular bursitis, nerve damage to his hand (third

degree frostbite), a pinched disc and bone spurs on his spine.  (Tr. 12, 70, 81).  The agency

denied his applications initially and on reconsideration.  (Tr. 12, 35, 42).  On January 22, 2007,

the ALJ issued a decision finding Plaintiff not disabled.  (Tr. 12-25).  On July 31, 2008, United

States Magistrate Judge Barry A. Bryant entered a Report and Recommendation, stating that,

because of the "significance of the inconsistencies from the three physicians who evaluated

Plaintiff and the internal inconsistencies of Dr. Bunting's report, this matter should be remanded

to allow the ALJ to obtain an explanation from Dr. Bunting for these inconsistent findings and

-1-

further develop the record as it relates to Plaintiff's mental impairment." Judge Bryant indicated

that based on his findings, he did not find it necessary to reach other points of error raised by

Plaintiff in the appeal. (Tr. 350-359). On September 4, 2008, United States District Judge Jimm

Larry Hendren entered a Judgment, adopting the Report and Recommendation, thereby

remanding the matter to the Commissioner. (Tr. 349). Pursuant to Plaintiff's request, the ALJ

held a hearing on July 14, 2009, at which Plaintiff and two friends testified. (Tr. 436-458).

By written decision dated November 20, 2009, the ALJ found that Plaintiff was not

disabled prior to March 5, 2006, the date Plaintiff turned fifty (50) years of age, but became

disabled on that date, and has continued to be disabled through the date of the decision. (Tr.

339). The ALJ found that during the relevant time period, between May 22, 2001, and March

5, 2006, Plaintiff had an impairment or combination of impairments that were severe - arthritis

and depression. (Tr. 341). However, after reviewing all of the evidence presented, he

determined that Plaintiff's impairments did not meet or equal the level of severity of any

impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No.

4. (Tr. 341). The ALJ determined that prior to March 5, 2006, Plaintiff had the residual

functional capacity (RFC) to perform:

> sedentary work as defined in 20 CFR 303.1567(a) and 416.967(a) except the claimant
> can only occasionally climb, balance, crawl, stoop, kneel, and crouch. Also, the claimant
> has moderate restrictions in maintaining concentration, persistence and pace. He is
> moderately limited in the ability to understand, remember, and carry out detailed
> instructions and in the ability to respond to usual work situations and routine work
> changes. "Moderately limited" means more than a slight limitation, but the person can
> perform in a satisfactory manner. The claimant can do work involving few variables and
> little judgment and where the complexity of tasks is learned by rote.

(Tr. 342). With the help of a vocational expert (VE), the ALJ determined that prior to March

5, 2006, Plaintiff could perform other work, such as assembler and machine tender. (Tr. 346). The ALJ also found that Plaintiff became disabled on March 5, 2006, the date he turned 50 years of age, and continued to be disabled through the date of the decision. (Tr. 347).

Plaintiff brings this action, stating that the ALJ's decision is unsupported by substantial evidence insofar as it fails to find disability during the period of May 22, 2001, the original onset date, through March 5, 2006. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 9, 12).

**II.     Evidence Presented:**

The records reflect that Plaintiff complained of back pain as early as 1994, while employed as a furnace welder. (Tr. 246-250). On July 28, 2000, Plaintiff saw Dr. Rolland Lee Bailey for his lower back pain. (Tr. 155, 218). A lumbar spine examination was conducted on July 30, 2000, at Baxter County Regional Hospital, which revealed:

> 1.  Anterior bony osteophyte formation with bridging anteriorly at L5-S1 and traction spurring at the other levels of the lumbar spine.
> 2.  These changes appear chronic. There is no acute process.

(Tr. 152, 226, 270, 397). On August 8, 2000, a MRI of the lumbar spine was performed, which revealed:

> 1.  There does appear to be some flattening from both the right and left L5 nerve roots from facet hypertrophy at the L4-L5 level.
> 2.  The patient has a congenitally small thecal sac with obliteration of the cerebrospinal fluid space from the L3-L4 level on downward. However, the thecal sac is predominantly surrounded by fat, and there is not likely significant compression on the thecal sac or nerve roots from this surrounding fat.
> 3.  Prominent degenerative disc change at the L5-S1 level.

(Tr. 153, 225, 269, 396).

On September 13, 2000, Dr. Anthony D. McBride diagnosed Plaintiff with L5-S1

-3-

degenerative disk disease "with mechanical back pain." Dr. McBride reported that he explained to Plaintiff that it was a problem that might spontaneously resolve with autofusion of the disk space. He further stated that Plaintiff did not have any neurologic symptoms associated with his "congenital stenosis" and that he did not think any surgical intervention was indicated. (Tr. 229). Dr. McBride was going to provide Plaintiff with a lumbar corset for back support, and believed Ultram would be sufficient for any back pain complaints. (Tr. 229).

On January 8, 2001, Plaintiff went to see Dr. Bailey, who recorded that the Ultram was not working and that Plaintiff needed something different. (Tr. 151). On February 6, 2001, Dr. Bailey reported that Plaintiff's back was getting worse. (Tr. 149). Plaintiff continued to complain of back pain to Dr. Bailey in February of 2001 (Tr. 147, 149-151, 213-215), June and October of 2001 (Tr. 145-146, 209, 211), September of 2002 (140-141, 198, 202- 203), and January of 2003. (138-139, 199-200).

On January 27, 2004, a General Physical Examination was conducted by Dr. Simon Abraham for the Social Security Administration. (Tr. 167-173). Dr. Abraham recorded that Plaintiff was a difficult historian, talked constantly, and made a coherent discussion difficult. (Tr. 167). However, Dr. Abraham stated that Plaintiff mainly had "low back pain with radicular symptoms due to bursitis; pain in the left elbow and rt. knee; tremor in both hands." (Tr. 167). Plaintiff was reported to have normal range of motion, walked fairly well, had normal limb function, and a tremor of the right hand "off and on." (Tr. 170-171). Dr. Abraham diagnosed Plaintiff with:

1. DX L5S1 D.D.D. (degenerative disc disease) with radiculopathy[1]

---

[1]Radiculopathy - Disease of the nerve roots. Dorland's Illustrated Medical Dictionary 1595 (31st ed. 2007).

    2.  History of bursitis - left elbow right knee
    3.  History of tremor

(Tr. 173).  Dr. Abraham stated that Plaintiff might be a candidate for a diskectomy and fusion, and also reported that Plaintiff could perform the functions of walking, standing, sitting, lifting, carrying, handling, fingering, seeing, hearing and speaking.  (Tr. 173).

On February 10, 2004, non-examining physician, Dr. R.W. Beard,  completed a Physical RFC Assessment.  (Tr. 175-182).  Dr. Beard found that Plaintiff could:

> occasionally lift and/or carry (including upward pulling) 50 pounds;  frequently lift and/or carry (including upward pulling) 25 pounds;  stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday;  sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, and push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry.

(Tr. 175).  Dr. Beard further found there were no postural, manipulative, visual, communicative, or environmental limitations established, and that it was an "essentially normal exam." (Tr. 177-182).

On April 11, 2006, Plaintiff presented himself to Dr. Ed White, at North Central Arkansas Medical Associates, as a new patient.  (Tr. 265-266).  At that time, although Plaintiff reported back pain, he was on no medications, and reported that he had not been on any medicines recently.   (Tr. 266).   Dr. White discussed his philosophy on long term pain management, and encouraged Plaintiff to possibly pursue the Christian Clinic, due to his financial situation.  (Tr. 266).

On April 19, 2006, an Adult Diagnostic Assessment was completed by Adam Brazos at Ozark Counseling Services, Inc., wherein it was noted that Plaintiff appeared to "be trying to build a case for disability." (Tr. 242).  He was diagnosed with:

| Axis I: | Adjustment d/o with disturbance of emotions and conduct |
|---|---|
| Axis II: | 799.9 Dx (Diagnosis deferred on Axis II) |
| Axis III: | Chronic back pain, arthritis, HBP, headaches |
| Axis IV: | Occupation problems |
| Axis V: | 55 |

(Tr. 244).

On April 24, 2006, Dr. R. Steve Austin, of Ozark Counseling Services, Inc., conducted a Psychiatric Evaluation. (Tr. 237-239). In the evaluation, Dr. Austin noted that Plaintiff had chronic back pain since 1994, drank a few beers a day and a few six-packs when he was in pain with no pain medications, and that he would get pain medications "off the streets." (Tr. 237). Dr. Austin's diagnostic impression was:

| Axis I: | Adjustment Disorder with Mixed Disturbance of Emotions and Conduct, chronic. |
|---|---|
| Axis II: | Rule out Personality Disorder |
| Axis III: | 1. History of chronic back pain |
|  | 2. History of arthritis |
|  | 3. History of high blood pressure |
|  | 4. History of headaches |
|  | 5. Status post tonsillectomy |
|  | 6. History of restless leg syndrome |
| Axis IV: | Occupational/access to health care/economic-moderate. |
| Axis V: | GAF - 55. |

(Tr. 239).

On April 28, 2006, Plaintiff presented himself to North Central Arkansas Medical Associates to follow up on his back pain and high blood pressure. (Tr. 300). He had begun taking Atenolol, and his blood pressure was better. Plaintiff was also sleeping better with the Amitriptyline, but was still having some pain. The doctor recommended that he cut down the Tramodol with Acetaminophen, and recommended significant adjustment in Plaintiff's diet and exercise. (Tr. 300).

-6-

On May 1 and 2, 2006, a neuropsychological evaluation was conducted by Vann Smith,

Ph.D. (Tr. 187-191). In a Mental RFC Questionnaire dated May 2, 2006, Dr. Smith diagnosed

Plaintiff with:

| | |
|---|---|
| Axis 1: | 294.10/293.83[2] |
| Axis II: | None |
| Axis III: | TBI[3] |
| | DDD(degenerative disc disease) |
| | DJD(degenerative joint disease) |
| | HTN(hypertension) |
| | High cholesterol |
| | Diabetes |
| | Chronic pain |
| Axis IV - | Moderate, chronic |
| Axis V - | 40-45 |
| | Highest GAF previously - 70-75 |
| | Prognosis: Fair |

(Tr. 192). Dr. Smith found Plaintiff unable to meet competitive standards in 9 categories;

seriously limited, but not precluded, in 7 categories; and limited, but satisfactory in 8 categories.

(Tr. 194). Dr. Smith also found that Plaintiff's impairments or treatment would cause him to be

absent from work more than four days per month. (Tr. 195).

On September 19, 2006, a Medical Source Statement of Ability to do Work-Related

Activities (Physical) was completed by Dr. Alice M. Martinson, of the Orthopaedic & Sports

Medicine Clinic of Northwest Arkansas. (Tr. 276-279). Dr. Martinson found that Plaintiff could

occasionally lift and/or carry (including upward pulling) 25 pounds; frequently lift and/or carry

(including upward pulling) 20 pounds; stand and/or walk less than 2 hours in an 8-hour

workday; sit about 6 hours in an 8-hour workday; and must periodically alternate sitting and

---

[2]The Court is unsure what diagnosis Dr. Smith is referencing with 294.10, and 293.83 is listed in Diagnostic and Statistical Manual of Mental Disorders 21 (4th ed. 2000) as a type of Mood Disorder.

[3]The Court is unsure what acronym Dr. Smith is referencing, but suspects it is "traumatic brain injury."

standing to relieve pain or discomfort. (Tr. 276-277).  She found that Plaintiff was limited in his

lower extremities and should never climb ramps, stairs, ladders, ropes, or scaffolds, and never

crouch, crawl, or stoop, but could occasionally balance and kneel.  (Tr. 277).  She found that he

had no manipulative, visual, communicative, and environmental limitations. (Tr. 278-279).  At

that time, his medications were Cyclobenzaprine, Tramadol, Atenolol, and Elavil.  (Tr. 274).

Dr. Martinson found that Plaintiff displayed considerable pain behavior throughout the

examination, characterized by grunting, groaning, and sighing, and maintained a more or less

continuous monologue throughout the encounter, talking about his multiple injuries, life

problems, and suffering.  (Tr. 275).  He "voluntarily limits foreward [sic] flexion" to no more

than about 30 degrees, bringing his fingertips only to the level of his proximal calves.  He would

display "zero degrees of extension, lateral bend, and rotation because of complaints of pain."

(Tr. 275).  He was noted to have "intention tremors of both hands with no resting tremor."  (Tr.

275).  Dr. Martinson concluded:

> I believe that this man has clinical and imaging evidence of substantial
> degenerative disc disease in the lower lumbar spine with probable right L5 radiculopathy.
> He also appears to have substantial psychological abnormalities and is most likely a
> practicing alcoholic.  He tells me that he is scheduled for psychological evaluation as a
> part of his Social Security evaluation process.  I most strongly urge that the results of that
> examination be considered in the adjudication of this case.
> Utilizing the AMA Guidelines (Fourth Edition ) I can assign him a Total Body
> Impairment Rating of ten percent based on the physical abnormalities in his lumbar spine
> and right leg.

(Tr. 275).

As noted in Judge Bryant's Report and Recommendation dated July 31, 2008, the ALJ

directed a mental evaluation following a previous administrative hearing, and Plaintiff was seen

by Dr. Nancy Bunting for an Intellectual Assessment and Adaptive Functioning evaluation on

October 4, 2006.  Judge Bryant found:

> Dr. Bunting diagnosed Plaintiff with adjustment disorder, cognitive disorder and personality disorder.  (Tr. 284).  Dr. Bunting gave Plaintiff a GAF score of 55 which indicates *moderate* functional limitations.  (Tr. 284).  However, Dr. Bunting indicated in her report that Plaintiff had *marked* limitations in functional capabilities.  (Tr. 286-287).  The ALJ found Dr. Bunting's finding of *marked* limitations to be internally inconsistent with the other findings of her report and as such, placed no reliance of[sic] these findings.
>
> Although it is true Dr. Bunting's findings are inconsistent with one another, the ALJ fails to explain why Dr. Bunting's finding of Plaintiff's GAF score of 55 should be given preference over the findings of marked limitations in functional capabilities. The record does not provide a basis demonstrating how such determination was made.

(Tr. 356-357).  Accordingly, Judge Bryant remanded the matter in order for the ALJ to obtain an explanation from Dr. Bunting for the inconsistent findings and further development of the record as it relates to Plaintiff's mental impairments. (Tr. 352-353).

In an effort to comply with Judge Bryant's remand directions to allow the ALJ to obtain an explanation from Dr. Bunting for her inconsistent findings and to further develop the record as it related to Plaintiff's mental impairment, the ALJ asked Stephen R. Harris, Ph.D., consulting psychologist, to evaluate Plaintiff.  Accordingly, on February 16, 2009, Dr. Harris diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | Pain Disorder, associated with both psychological factors and general medical condition |
| | Adjustment Disorder, with depressed mood |
| Axis II: | Dependent Personality Disorder |
| Axis V: | GAF - Current - 52 |

(Tr. 292).  Dr. Harris found that for the most part, Plaintiff did seem to concentrate and attend throughout the evaluation, except for the "CARB" (Computerized Assessment of Response Bias), and although Plaintiff appeared to have some difficulty at times in completing tasks, he seemed to be rather dependent and passive, which would interfere in completing tasks in an

-9-

AO72A
(Rev. 8/82)

acceptable time frame.  Dr. Harris further found:

> The CARB indicated that his effort was poor or incomplete.  Performance on this test indicated that he was either consciously or unconsciously exaggerating the difficulties of his memory and concentration skills.  It appears that rather than a true malingering, he does seem to exaggerate his symptoms and is quite dependent upon others for direction.

(Tr. 293).

In a March 10, 2009 Medical Source Statement of Ability to Do Work-Related Activities

(mental), Dr. Harris found Plaintiff suffered from:

> no restrictions in understanding and remembering simple instructions or carrying out simple instructions; mild restriction in the ability to make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, ability to make judgments on complex work-related decisions; mild restriction to interact appropriately with the public, supervisors, co-workers, respond appropriately to usual work situations and to changes in a routine work setting.

(Tr. 295-296).  Dr. Harris reported that there was a question as to exaggeration of symptoms, and

that Plaintiff seemed to at least in the past abuse alcohol and may at present, which would increase

intellectual and emotional difficulties.  (Tr. 296).

In his disability report dated September 1, 2003, Plaintiff stated that the conditions which

limited his ability to work were:  bursitis;  nerve damage to his hands;[4]  and a pinched disc and

bone spurs on his spine.  (Tr. 81).  In his September 1, 2003 Supplemental Interview Outline,

Plaintiff reported that he needed assistance in putting on his socks and shoes, and with foot care

in general.  He further reported that he could not stand in one spot for too long, or move suddenly,

twist or bend over excessively, and that his hands shook due to nerve damage.  He stated that he

could not pay bills or use a checkbook, pick up small objects, or concentrate for extended periods

---

[4]Plaintiff asserts that in the early 90's, he fell on some ice and became unconscious, and his fingers suffered frost bite.

-10-

of time.  (Tr. 98-99).  On an average day, he would take a shower and his medications, read the

paper, watch television, walk out to the mail box, and take a nap.  (Tr. 101).

On August 3, 2004, Plaintiff provided a statement when his request for hearing was filed,

stating that he had more chronic back pain and spasms, and that nerve tremors to his hands had

increased.  He felt depressed and less social, and could not concentrate, due to constant pain.  At

that time, he was taking Atenolol, Robarin, and Hydrocodone.  (Tr. 110).

On August 10, 2004, in a Disability Report - Appeal, Plaintiff reported that he had more

chronic back pain and spasms; that his nerve tremors in his hands had increased, and that he felt

more depressed and less social, and could not concentrate, due to constant pain.  (Tr. 111).  At

that time, he reported that he was seeing Dr. Bailey every three months for his arthritis, bursitis,

pinched disc, bone spurs on his spine, nerve damage, and tremors in his hands.  (Tr. 112).

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be

affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F. 3d

964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the

Commissioner's decision, the Court may not reverse it simply because substantial evidence exists

in the record that would have supported a contrary outcome, or because the Court would have

decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other

words, if after reviewing the record, it is possible to draw two inconsistent positions from the

-11-

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC).  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

-12-

**IV. Discussion**

Plaintiff asserts that the ALJ's decision is unsupported by substantial evidence insofar as it fails to find disability during the period of May 22, 2001, through March 5, 2006. (Doc. 9 at p. 3). Plaintiff raises the following issues on appeal: 1) The onset date of March 6, 2006 is ambiguous and that medical evidence exists which is suggestive of a far earlier onset date than the one determined by the ALJ; 2) No effort was made by the ALJ to address questions to a medical expert, his treating physician, or Dr. Smith regarding his functional capacity due to chronic pain at that time, and the ALJ did not comply with the dictate of remand; 3) The ALJ erred in failing to find that Plaintiff's degenerative disc disease was not a severe impairment; and 4) The ALJ's decision denying benefits prior to March 6, 2006 was not supported by substantial evidence.[5]

**A. Impairments:**

**1. Degenerative disc disease**

Plaintiff argues that the ALJ erred in finding that Plaintiff's degenerative disc disease was not a severe impairment. Defendant submits that substantial evidence supports the ALJ's severe impairment determination, but even if this was error, such omission was harmless error because the ALJ considered the combined effects of all of Plaintiff's impairments, even those that were not severe.

An impairment is not severe if it amounts to only a slight abnormality that would not significantly limit the claimant's physical and mental ability to do basic work activities. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 158 (1987); <u>Kirby v. Astrue</u>, 500 F.3d 705, 707 (8th Cir. 2007). An

---

[5]Arguments #1 and #4 are essentially the same and the Court will treat them as such.

-13-

error is harmless when there is no indication that the ALJ would have decided differently without the error.  See Van Vickle v. Astrue, 539 F.3d 825, 830-31 (8th Cir. 2008).  In the present case, the ALJ did not discuss Plaintiff's degenerative disc disease in his step-two finding.  However, the ALJ's decision as a whole shows that the ALJ considered the effects of Plaintiff's degenerative disc disease.

The ALJ did find that Plaintiff's physical impairments did not meet or equal Listing 1.04, which regulates disorders of the spine, such as degenerative disc disease and facet arthritis, and noted that the medical records did not demonstrate compromise of a nerve root or the spinal cord with evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication as described in Listings 1.04A, B, and C.  (Tr. 341).  The ALJ also recognized that Plaintiff had been diagnosed with arthritis or degenerative disc disease in his lumbar spine, and depression, when he found Plaintiff would be able to perform sedentary work, with limitations in his ability to only occasionally climb, balance, crawl, stoop, kneel, and crouch. (Tr. 342).

An arguable deficiency in opinion-writing technique does not require the Court to set aside an administrative finding "when that deficiency had no bearing on the outcome."  Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992).  The Court believes that the ALJ would not have decided the matter differently even if he had included degenerative disc disease as a severe impairment.   Therefore, the omission of degenerative disc disease in his step two discussion was harmless error.

### 2.  Mental Impairment

Contrary to Plaintiff's assertion, on remand, the ALJ explained Dr. Bunting's inconsistent

-14-

findings and more fully developed the record relating to Plaintiff's mental impairments, by having

Plaintiff submit to another mental evaluation by Dr. Stephen R. Harris.  Dr. Harris was supplied

with Dr. Bunting's report and Dr. Smith's report, and he stated that he reviewed the reports prior

to his evaluation.  (Tr. 289).

In his findings, the ALJ gave Dr. Harris's report substantial weight regarding Plaintiff's

mental impairments, since it was the most recent.  He also explained why he gave Dr. Bunting's

report less weight:

> The claimant was seen earlier by Nancy A. Bunting, Ph.D. for a mental status consultative examination (exhibit 16F).  Dr. Bunting believed that the claimant had marked limitations in the abilities to carry out short, simple instructions; to understand, remember, and carry out detailed instructions; to make judgments on simple work-related decisions; to interact appropriately with the public, supervisors, and coworkers; and to respond to work pressures in a usual work setting (exhibit 16F).  However, Dr. Bunting's opinion is given less weight because she noted that the claimant's borderline IQ may be an underestimate and that the claimant is preoccupied with his own emotional turmoil and anger (exhibit 16F).  Dr. Bunting also thought that it was possible that substance abuse contributed to the claimant's limitations (exhibit (16F).  Of course, if drugs and alcohol are a contributing factor material to the finding of disability, the claimant cannot be found disabled (20 CFR 404.1535).  In this case, Dr. Bunting's statement regarding substance use only serves to lessen the weight of her opinion because she did not evaluate the claimant regarding his substance use.

(Tr. 344).

The ALJ also addressed  Dr. Vann Smith's assessment.  In fact, the ALJ stated that some

of Dr. Smith's findings were given some weight, to the extent they were consistent with Plaintiff's

RFC, wherein he could perform work involving few variables and little judgment and where the

complexity of tasks is learned by rote. (Tr. 344-345).  The ALJ explained that he discounted Dr.

Smith's opinion that Plaintiff could not meet competitive standards in the areas of maintaining

attention for two hours; maintaining regular attendance and being punctual within customary,

-15-

usually strict, tolerances; sustaining an ordinary routine without special supervision; completing

a normal workday or workweek without interruptions from psychologically based symptoms; and

performing at a consistent pace without an unreasonable number and length of rest periods. The

ALJ found those findings to be inconsistent with someone who scored a full scale IQ of 101 and

inconsistent for someone who had limited but satisfactory abilities to perform unskilled work.

He further analyzed Dr. Smith's opinion as follows:

> Also undermining Dr. Smith's opinion is that he does not explain how the test scores
> obtained during his evaluation lead to the conclusions he relates in his report. The report
> does not indicate that the claimant's test results are any worse than they would have been
> prior to his alleged onset date. At best, the test results show that the claimant had
> developed his symptoms at the time of the examination which was five years after his
> alleged onset (exhibit 10F). In short, Dr. Smith's evaluation tends to support the finding
> that the claimant could perform unskilled work, and it does not fully support the
> allegations regarding the limiting effects of the claimant's mental impairment.

(Tr. 345).

The Court believes there is substantial evidence to support the ALJ's findings with regard

to Plaintiff's mental impairment.

### B. Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective

complaints, including evidence presented by third parties, that relates to: (1) Plaintiff's daily

activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating

factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional

restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not

discount a claimant's subjective complaints solely because the medical evidence fails to support

them, an ALJ may discount those complaints where inconsistencies appear in the record as a

-16-

whole.  Id.  As the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In the present case, Plaintiff stated that his daily activities consisted of taking a shower, taking medications, reading the paper, watching television, walking out to the mailbox, lying down, taking a nap, and playing dominoes, board games and cards.  Plaintiff only sought medical treatment one time in 2003, from Dr. Bailey.  In his Disability Report dated September 1, 2003, Plaintiff reported taking certain prescription medications, such as Atenolol, Naproxen, Viox, Robaxin, and Hydrocodone.  However, on April 11, 2006, Plaintiff reported that he was not taking any current medications.  Failure to seek regular treatment or obtain pain medication has been found to be inconsistent with complaints of disabling pain.  Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996), citing Benskin v. Bowen, 830 F.2d 878, 884 (8th Cir. 1987).

The ALJ stated that he considered all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence.  (Tr. 342).  He further acknowledged that once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, he must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities.  (Tr. 342).  The ALJ also stated that after consideration of the evidence, he found Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment."  (Tr. 342).

-17-

The Court believes there is substantial evidence to support the ALJ's credibility findings, and that the ALJ properly evaluated Plaintiff's subjective complaints of pain.

### C. RFC Determination:

The ALJ concluded that between the original onset date of May 22, 2001, through March 5, 2006, Plaintiff had the RFC to perform sedentary work, with certain limitations.  RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005);  Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).   Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

It is true that Plaintiff had a history of chronic intermittent back pain with radiation into his right leg.  However, on September 13, 2000, Dr. McBride, who diagnosed Plaintiff with L5-S1 degenerative disk disease with mechanical back pain, opined that Plaintiff's back pain did not warrant surgical intervention, and he prescribed a lumbar corset for back support and medications.  (Tr. 229).  Dr. Simon Abraham, who performed a consultative physical examination in 2004, found Plaintiff to have a normal range of motion of his cervical spine, with only very minimal

-18-

limitation on Plaintiff's lumbar spine.  He found that Plaintiff walked "fairly well," was able to hold a pen and write, touch fingertips to his palm, had 100% grip, could oppose thumb to fingers, pick up a coin, stand and walk without assistive devices, walk on his heels and toes, and, with support, squat and arise from a squatting position.  (Tr. 171).  He also found that Plaintiff had no limitation of his ability to walk, stand, sit, lift, or carry.  Two years later, on April 11, 2006, Plaintiff reported his back pain to North Central Arkansas Medical Associates, as a new patient, and reported that he had not been on any medications recently.

On September 19, 2006, Dr. Martinson found that Plaintiff had degenerative disc disease in the lower lumbar spine with probable right L5 radiculopathy.  It is true that Dr. Martinson stated that Plaintiff could **never** climb, crouch, crawl, and stoop, and yet the ALJ, in his RFC, stated that Plaintiff could **occasionally** climb, balance, crawl, stoop, kneel and crouch.  However, Dr. Martinson noted in her examination that Plaintiff "voluntarily limits forward [sic] flexion to no more than about 30 degrees bringing his fingertips only to the level of his proximal calves."[6] Furthermore, neither of the jobs described by the VE and referenced by the ALJ in his decision - assembler and machine tender (Dictionary of Occupational Titles § § 713.687-026 and 673.685-042) require any climbing, balancing, stooping, kneeling crouching or crawling.  With respect to Dr. Martinson's recommendation that Plaintiff could sit for about six hours in an 8-hour workday and must periodically alternate sitting and standing to relieve pain or discomfort, the Court believes the ALJ was correct in not including the sit/stand option in his RFC finding, since a sedentary job is generally defined as one that involves sitting, and occasional walking and

---

[6]The Court notes that Dr. Martinson utilized the AMA Guidelines (Fourth Edition), and assigned Plaintiff a total body impairment rating of ten percent based on the physical abnormalities in his lumbar spine and right leg.  (Tr. 275).

AO72A
(Rev. 8/82)

standing is often necessary in carrying out job duties.  See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000);  20 C.F.R. § 404.1567(a).  Therefore, even if the ALJ had included a sit/stand option, it would not have precluded Plaintiff from performing the jobs identified by the ALJ.  The Court also notes that the general physical consultative examiner and the state agency consultants reported no postural limitations.

Based upon the entire evidence of record, the Court believes there is substantial evidence to support the ALJ's RFC findings.

### D.  The March 5, 2006 Onset Date

Plaintiff argues that substantial evidence does not support the ALJ's determination that Plaintiff became disabled on March 5, 2006, the date he became an individual closely approaching advanced age, arguing that this date was arbitrary, and that the evidence shows Plaintiff was disabled prior thereto.  In his written hypothetical to the VE dated July 14, 2009, the ALJ advised the VE that Plaintiff could not return to any past relevant work, and that there were no acquired skills that would transfer to work within his limitations.  (Tr. 419).

20 C.F.R. pt 404, Subpart P, app 2, § 201.00(g) provides, in pertinent part:

Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work.  When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains. ...

The Court believes the ALJ's reliance on March 5, 2006, was neither ambiguous nor arbitrary.

Therefore, the ALJ was warranted in finding that Plaintiff had the RFC to perform sedentary work prior to March 5, 2006, but became disabled on that date.

-20-

**V.     Conclusion:**

Based upon the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 4th day of August, 2011.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE .

-21-